## BELL v. FILM ADVERTISING CORPORATION.

### No. 13227.

Court of Civil Appeals of Texas. Dallas. July 17, 1942.

Rehearing Denied Sept. 25, 1942.

Bonney & Paxton and M. M. Wade, all of Dallas, for appellant.

Wm. Andress, Jr., of Dallas, for appellee.

BOND, Chief Justice.

This is a suit for breach of contract, appellant seeking cancellation thereof on the ground that appellee failed to render all-important service within the terms of the agreement and the contemplation of the parties, and for the court to find the value of partial service rendered under the contract and enter judgment accordingly. Appellee entered general denial and, in cross action, sought judgment for the contract price of $10.50 per week for 18 weeks' service.

Briefly, the written contract provided that Film Advertising Corporation, appellee, should furnish C. S. Bell, appellant, advertising service for a period of 24 weeks, on screens of theaters located in Dallas, Texas, depicting appellant's cleaning and pressing business. The advertiser, Bell, was to rent from Film Advertising Corporation a series of films, advertising dry cleaning, designated in the record as of "library films," which were to be displayed in theaters and changed every week during the life of the contract. These were "stock films," suitable for all cleaning and pressing plants—not designating any named plant. In addition to these library films, the contract provides that the advertiser shall furnish a picture of some special feature of his business for display along with the library films; and that, in the event such picture is not furnished within three weeks of the time of display, the Corporation shall exercise its own discretion in its preparation.

The important issue involved in this controversy is the application to be given the provision written into the printed contract: "The advertiser will get change of film every six weeks." Appellant contends that the provision has reference to the special feature trailer film, while appellee contends that it has reference only to changes in the regular library film. There is no controversy relative to the performance or nonperformance by either party of the contract for the first six weeks period; the advertiser received for that period of time the services of the Corporation, both as to the film and trailer. The library films were displayed and changed every week, perforce of the contract, and the trailer (picture or film) was also displayed continuously, without

change, for the first six weeks; and the advertiser paid the Corporation $63 for the six weeks; but on refusal of the Corporation, on demand, to make a change in the trailer display after the six weeks' run, appellant refused to pay more, resulting in this suit for forfeiture of the contract for the remaining 18 weeks, and defendant's cross action for the remainder of the contract price of $189.

On trial to a jury, verdict was rendered: (1) That the defendant agreed there would be a change of pictures of plaintiff's cleaning plant every six weeks; and (2) that $94.50 was a reasonable value for whatever screen advertisement was displayed for the last 18 weeks of the contract. In due time, plaintiff filed motion, in accordance with the findings of the jury, to enter judgment against him for the sum of $94.50; defendant filed motion, non obstante veredicto, for $189. The court denied plaintiff's motion, sustained that of defendant and entered judgment against plaintiff and in favor of defendant for the sum of $189.

It is admitted that defendant did not furnish the picture or photograph for the special trailer, and that the Corporation did not initiate, produce and display any special feature film or trailer of the advertiser's business after the first six weeks of the life of the contract. Plaintiff admits in pleadings and proof that it received some benefit from partial performance of the contract and tendered payment of the value thereof.

It will be observed from the contract that the library films, depicting cleaning and pressing plants in general, were to be changed "every week rotating for a continuous period of 52 weeks" (changed to 24 weeks); while as to the individual feature trailer, the contract provides: "The advertiser agrees to furnish The Co. with copy for individual trailer or other special production three weeks in advance of time production is to be shipped by The Co. Animation is left to the discretion of The Co. If the advertiser fails to furnish copy within the time specified above, The Co. is authorized to use its discretion in its preparation."; and then follows the provision that "The advertiser will get change of film every six weeks." We think the "change of film every six weeks" has no reference to the library films, as those films, perforce of the contract, were to be "changed every week."

If the provision that the advertiser was to "get change of film every six weeks" has application to the library film, such would be in conflict with, or in dereliction of, the prior obligation that the library films were to be changed "every week." It is true that the contract makes mention of "films" and "trailers," yet we think it would be fair to say that a "trailer" produced from a picture or drawing of some special feature of one's business, could not be displayed on a screen without being filmed or reproduced in some way for projection. It must be conceded that the contract itself, independent of proof, provides for two kinds of display film; each sufficiently described; one denominated "film" and the other "trailer." It would seem immaterial as to the name— whether "film" or "trailer"—for the reason that the contract contemplates the projection of a film with a trailer, depicting cleaning and pressing plants in general and a special feature of plaintiff's plant. So, we need not quibble over the name employed. The contract, having expressly provided for library films to be changed every week, dispels the idea that the advertiser would get a change of that kind of film every six weeks. The provision carrying that idea would be an idle, meaningless effort on the part of the contracting parties, imposing no additional obligation for change of film at the end of six weeks. We think the covenant in question can have but one reference and that is, to the "trailer," which was to be run longer than for weekly periods, and to be changed every six weeks during the life of the contract. Then, too, the contract expressly provides that the advertiser should furnish the special picture for trailer "three weeks in advance of time of production * * *. If the advertiser fails to furnish copy within the time specified above, The Co. is authorized to use its discretion in its preparation." From this, it is quite evident that the advertiser was to have a change in the trailer, and that the Corporation was to exercise its discretion in preparation of such trailer and give the advertiser a change in the trailer. The Corporation cannot escape responsibility for its failure to make the change, on the ground that the advertiser did not furnish the copy. It was the Corporation's duty to exercise the discretion granted and give the advertiser a change of film or trailer; and its failure to do so breached the contract, justifying cancellation thereof.

The judgment of the court below is reversed and judgment here rendered in favor of appellant, cancelling the contract in suit, and in favor of appellee for the sum of $94.50; with all costs in the court below and on appeal taxed against appellee.

Reversed and rendered.